FILED & JUDGMENT ENTERED
Steven T. Salata

Sep 14 2011

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
J. Craig Whitley
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

In re:                                )
                                      )   Chapter 7
**JAMES C. LEVER and**                )
**KARLA H. LEVER,**                   )   Case No. 11-31057
                                      )
       Debtors            )
_____)

**ORDER DECLINING TO DETERMINE DEBTORS' TAX LIABILITIES
UNDER 11 U.S.C. § 505**

**THIS MATTER** was before this Court for hearing on August 25, 2011 upon the Debtors' Motion for Determination of Tax Liability Under 11 U.S.C. § 505. The Levers were represented by counsel at the hearing. Neither potential respondent Internal Revenue Service ("IRS") nor the North Carolina Department of Revenue ("NCDR") responded to the Motion or appeared at the hearing. Nevertheless, and for the reasons stated below, the Court declines to determine the Debtors' tax liabilities as requested by the Motion.

**BACKGROUND**

1. On April 21, 2011 (the "Petition Date"), the Levers filed a voluntary Chapter 7

1

petition in this Court.  Burton Shuford was appointed Chapter 7 Trustee in the case.

2.  James Lever operated a corporation known as Lever Construction Services, Inc. ("LCSI") from May of 2003 to February of 2011.  LCSI specialized in interior drywall projects.  James Lever no longer operates LCSI, and the company is insolvent.  James Lever is the sole shareholder of LCSI, and he also served as the company's president during its period of operation.

3.  Karla Lever has never held any ownership interest in LCSI, has never been employed by the company, and has never participated in LCSI's management or business operations.

4.  LCSI employed Cynthia Akers as office manager and bookkeeper during all times pertinent to this Motion.

5.  According to the Motion, the IRS has assessed unpaid trust fund taxes and related penalties against LCSI in the amount of $188,724.23 for the third and fourth quarters of 2009 and for all four quarters of 2010.

6.  On April 12, 2011, or nine days prior to the Petition Date, the IRS sent James Lever a notice informing him that it intended to assess responsible person liability against him pursuant to 26 U.S.C. § 6672.

7.  On July 7, 2011 the NCDR notified LCSI of its attempt to attach and garnish funds due to the company for alleged nonpayment of state trust fund taxes and related penalties in the amount of $11,011.23 relating to the first quarter of 2009.  The Levers indicate that, to date, NCDR has not attempted to impose personal responsibility for these tax liabilities against them pursuant to N.C.G.S. § 105-242.2.

8.  The amount of tax and any related penalties to be assessed against the Levers at the state or federal level has not been contested and adjudicated before a judicial or administrative tribunal of competent jurisdiction prior to the filing of this bankruptcy case.

**RELIEF REQUESTED**

By this Motion the Levers seek an order of this Bankruptcy Court under section 505(a)(1) of the Bankruptcy Code holding that they are not responsible parties and have no personal liability to either the IRS or NCDR with respect to unpaid payroll taxes of LCSI.

## DISCUSSION

To be personally liable for nonpayment of a corporation's federal "trust fund" taxes under 26 U.S.C. § 6672, an individual must be (a) a "responsible person" and (b) have the requisite willful intent of failing to collect, account for, and remit payroll taxes. *See Clary v. United States*, No. 3:94CV226-MCK, 1996 WL 167870, at *7 (W.D.N.C. Feb. 9, 1996) (citing *Slodov v. United States*, 436 U.S. 238, 98 S. Ct. 1778 (1978)).

Factors employed to determine whether a person is a "responsible person" for purposes of § 6672 are: (a) service as an officer of the company or as a member of its board of directors; (b) control of the company's payroll; (c) authority to determine which creditors to pay and when to pay them; (d) participation in the day-to-day management of the corporation; (e) possession of the power to write checks; and (f) the ability to hire and fire employees. *See Plett v. United States*, 185 F.3d 216, 219 (4th Cir. 1999).

At first glance, it would appear that James Lever, as president of LCSI, qualifies as a responsible party. However, James Lever contends that he did not ultimately determine which creditors to pay and when to pay them, nor did he have the ability to make, or fail to make, the quarterly tax payments. According to James Lever, all such payments were made via electronic funds transfers, which were the responsibility of LCSI's bookkeeper/employee Cynthia Akers.

Further, James Lever contends he did not willfully fail to pay the trust fund taxes at issue. "The failure to pay trust fund taxes cannot be willful unless there is either 'knowledge of nonpayment or reckless disregard of whether the payments were being made.' " *Turpin v. United States*, 970 F.2d 1344, 1347 (4th Cir. 1992) (quoting *Teel v. United States*, 529 F.2d 903, 905 (9th Cir. 1976)).

According to James Lever, he did not learn from Mrs. Ackers that LCSI's payroll taxes were not paid for 2009 until after the fact, at a time when the company was insolvent and unable to pay its debts as they came due. Further, the Levers contend that Karla Lever could not have been a "responsible party" and personally liable for these taxes in that she was not involved with the operations of LCSI.

Under 11 U.S.C. § 505(a)(1),

> the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative

3

tribunal of competent jurisdiction.

Section 505(a)(1) is discretionary. The statute uses the word "may." Accordingly, while Section 505(a)(1) affords a bankruptcy court the authority to determine a debtor's tax liability, the power to do so is discretionary. *In re Starnes*, 159 B.R. 748, 750 (Bankr. W.D.N.C. 1993).

Per *Starnes*, which has long been the law in this judicial district, the bankruptcy court determines whether to exercise its power to determine tax liabilities under section 505(a)(1) based upon the equities of the particular situation. *Id.* To aid in making that decision, *Starnes* adopted the factors employed by another bankruptcy court in a case titled *In re Hunt*, 95 B.R. 442 (Bankr. N.D. Tex. 1989). The *Hunt* factors include:

> the complexity of the tax issues to be decided, the need to administer the bankruptcy case in an orderly and efficient manner, the burden on the bankruptcy court's docket, the length of time required for trial and decision, the asset and liability structure of the debtor, and the prejudice to the taxing authority.

*Starnes*, 159 B.R. at 750 (citing *Hunt*, 95 B.R. at 445).

In *Starnes*, Bankruptcy Judge Marvin Wooten was presented with a situation very similar to the present case. After discharge the individual Chapter 7 debtor filed an adversary proceeding seeking a determination of his federal income tax liability. The United States, on behalf of the IRS, moved to dismiss the case for lack of subject matter jurisdiction. Judge Wooten held that the bankruptcy court possessed jurisdiction under section 505 to make the tax liability determination. Even so, exercising its discretion to abstain from making this determination was in order. The basis for this abstention was the following: *Starnes* was a "no-asset" bankruptcy estate, and the discharge had already been entered. Consequently, any determination by the bankruptcy court of Starnes's non-dischargeable tax liability would have no effect on the bankruptcy estate or on any creditor (apart from the IRS, of course). Rather, the determination would only benefit the debtor. *Id.* at 750–51.

Given this, and with neither the trustee nor the creditor body having a stake in the outcome, Judge Wooten determined that the tax court was a more appropriate forum in which to litigate these tax liability issues. His ruling cites and is in accord with the general case law in this area holding that abstention is appropriate where debtors contest a non-dischargeable tax debt in a no-asset Chapter 7 case. *Id.* As those cases hold, no bankruptcy purpose would be served by making these determinations in bankruptcy court that would outweigh the importance of uniformity of assessment. *Id.*; *In re Kaufman*, 115 B.R. 378, 379 (Bankr. S.D. Fla. 1990).

Judge Wooten further recognized the practical aspects of his ruling on the bankruptcy system and on the tax administration systems. If a bankruptcy court routinely entertained such motions in "no-asset" cases, then "every taxpayer could ignore IRS requirements for disputing tax liability, and then after the fact attempt to obtain a judicial determination in bankruptcy court." *Starnes*, 159 B.R. at 751. As between the bankruptcy court and the IRS/tax court, the latter possesses superior resources and expertise to make such determinations.

Accordingly, the Levers' Motion is **DENIED** on the basis of abstention. The Levers may dispute their responsibility for such taxes at the appropriate time through administrative procedures in the tax adjudication process and in the U.S. Tax Court and/or North Carolina State Court, if necessary.

**SO ORDERED**.

**This Order has been signed electronically.**  **United States Bankruptcy Court**
**The Judge's signature and Court's seal**
**appear at the top of the Order.**

5